UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ALEIDA ARCE, by and through its Successor in Interest, MARIA HERNANDEZ HUERTA, et al., Plaintiffs, v. PANISH SHEA & BOYLE LLP, Defendant. | Case No.: 19-cv-0500 AJB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (Doc. No. 6); AND**<br><br>**(2) DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT (Doc. No. 5)** |

Presently before the Court is Defendant Panish Shea & Boyle LLP's ("Defendant") motion to compel arbitration, (Doc. No. 6) and motion to dismiss for failure to state a claim, or in the alternative, motion to strike punitive damages from Plaintiffs' complaint, (Doc. No. 5). The motions were fully briefed on May 22, 2019. Having reviewed the parties' arguments and controlling legal authority, and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS** Defendant's motion to compel arbitration and **DENIES AS MOOT** Defendant's motion to dismiss. Furthermore, the Court **STAYS** these proceedings pending the outcome of any arbitration.

//

## I. BACKGROUND

This case involves claims for legal malpractice against Defendant Panish Shea & Boyle LLP, a personal injury law firm located in Los Angeles, California. (Doc. No. 1-2, Complaint "Compl." ¶ 1.)

On February 3, 2013, Plaintiff Victoria Arce and her mother, Aleida Arce ("Decedent") were traveling on a tour bus on California State Route 38 near Yucaipa, California. (*Id.* at ¶ 2.) The tour bus was owned and operated by Interbus Tours and Charter and Scapadas Magicas, LLC. (*Id.*) On the last leg of the trip, the bus driver lost control of the bus, careened into other vehicles, crossed the center divider, collided with an oncoming truck, before rolling over and coming to a rest in the middle of the roadway. (*Id.*) During the accident, passengers were ejected from the bus. (*Id.*) Decedent suffered fatal blunt force injuries. Plaintiff Victoria Arce suffered blunt force trauma to her head and sustained severe injuries. (*Id.*)

Defendant pursued and settled a case in state court on Plaintiffs' behalf. (*Id.* at ¶ 3.) Plaintiffs' case in state court included causes of action for wrongful death, a survival action, and a personal injury claim by Plaintiff Victoria Arce. (*Id.*) After settlement of the state court case, Plaintiffs filed another separate lawsuit, alleging that Defendant failed to file, pursue, or settle a case in federal court on Plaintiffs' behalf. (*Id.* at ¶ 4.) Specifically, Plaintiffs assert two causes of action for professional negligence and for breach of fiduciary duty. Plaintiffs contend that a federal case should have been filed because the bus was regulated, overseen, inspected, and certified by the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). (*Id.*) Plaintiffs claim FMCSA failed to properly inspect the bus, and issued a satisfactory rating to the bus in violation of its duties and procedures. (*Id.*) Instead of pursuing a claim in federal court, Plaintiffs allege Defendant allowed the statute of limitations on the federal claim to run, even though the attorneys considered the claim, and knew that at least one other lawyer representing another passenger in the accident was pursuing such a federal claim. (*Id.* at ¶ 5.)

1  Plaintiffs filed their legal malpractice action in San Diego Superior Court on January
2  15, 2019. (Compl.) Defendants removed to this Court on March 15, 2019. (Doc. No. 1.)
3  On April 3, 2019, Defendant filed: (1) a motion to dismiss for failure to state a claim, or in
4  the alternative, motion to strike punitive damages from Plaintiffs' complaint (Doc. No. 5),
5  and (2) a motion to compel arbitration (Doc. No. 6.) The motions were fully briefed on
6  May 22, 2019. This order follows.

## II. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts routinely take judicial notice of documents filed on public court dockets under Rule 201(b). *See Porter v. Ollison*, 620 F.3d 952, 954–55 n.1 (9th Cir. 2010) ("Judicial notice is taken of court dockets in the state court proceedings."); *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 286 nn.2–3 (S.D. Cal. 1999). A court has authority to take judicial notice that certain proceedings occurred, but a court may not take "judicial notice of disputed facts stated in public records." *Perdue v. Rodney Corp.*, No. 13CV2712-GPC BGS, 2014 WL 3726700, at *4 (S.D. Cal. July 25, 2014).

Defendant requests the Court take judicial notice of documents filed in the previous state court litigation. (Doc. No. 14-1.) Defendant requests judicial notice of two documents—an Amended Petition for Compromise of Plaintiff Victoria Arce, and an Amended Order Approving Compromise of Minor, both filed in the state court matter, *Morales et al. v Scapadas Magicas et al.*, San Bernardino Superior Court, Case No. CIVDS1301868. Because these documents are part of the state court docket, the Court **GRANTS** Defendant's request to take judicial notice of both documents. *See Porter*, 620 F.3d at 954–55 n.1.

//
//

## III. LEGAL STANDARD

**A. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. *See* 9 U.S.C. § 2. Pursuant to § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4.

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.*

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). There is generally a strong policy favoring arbitration, which requires any doubts to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of

arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

IV. DISCUSSION

A. Motion to Compel Arbitration

1. Whether a Valid Agreement to Arbitrate Exists

As a preliminary matter, the Court must first resolve the issue of whether there was a valid agreement to arbitrate. Defendant moves for arbitration, arguing that Plaintiffs' fee agreement with Defendant contained a valid arbitration clause, and Plaintiffs' causes of action for professional negligence and breach of fiduciary duty fall within the scope of the arbitration agreement. (Doc. No. 6-1 at 4–5.) In opposition, Plaintiffs mount two arguments. First, Plaintiffs contend that the fee agreement is unenforceable and voidable because Defendant never presented Plaintiffs with a mutually executed contract at the time the contract was entered into. (Doc. No. 10-3 at 6.) Second, as an alternative ground, Plaintiff argues the contract was never formed in the first place because while Plaintiffs apparently signed the fee agreement, Defendant never signed the agreement until this litigation. (*Id.*) However, Defendant replies that the issue of whether the retainer is voidable is a question that should be saved for the arbitrator, and in any event, there was a binding agreement to arbitrate because Plaintiffs signed the retainer and paid Defendant for their legal representation through settlement. (Doc. No. 15 at 2–7.) Given the facts of this matter, the Court is faced with three different tasks: (1) assessing whether the question of contract formation or voidability should be left to an arbitrator; (2) determining if a contract was ever formed; and (3) determining whether a contract to arbitrate specifically exists. The Court will address each issue in turn.

a. Whether the Question of Contract Formation or Voidability Should Be Left to an Arbitrator

Before the Court addresses the issue of whether there was an arbitration agreement, the Court must first turn to whether that task belongs to an arbitrator or should remain with this Court. The FAA governs the question of who must decide issues of arbitrability. Under

5

the FAA, a district court must compel arbitration if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3 (1988). However, if the validity of the agreement to arbitrate is in issue, a district court—and not a panel of arbitrators—must decide if the arbitration clause is enforceable against the parties. *Id.* § 4; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (holding that if the making of the arbitration agreement is an issue "the federal court may proceed to adjudicate it"). Put simply, parties cannot be forced to arbitrate if they have not agreed to do so. *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478 (1989). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Here, Plaintiffs assert two alternative grounds in an attempt to avoid arbitration. First, Plaintiffs allege that no contract was ever formed. (Doc. No. 10-3 at 9.) And second, Plaintiffs argue that even if a contract was formed, it is voidable under California Business and Professions Code section 6147 because Plaintiffs were not provided with a fully signed copy of the retainer agreement. (*Id.*) The Court must determine if either question is appropriate for the Court to resolve.

Defendant cites to *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) for the proposition that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." (Doc. No. 15 at 3.) In *Buckeye*, the Supreme Court explained that challenges to the validity of arbitration agreements can be divided into two types—"one type challenges specifically the validity of the agreement to arbitrate" and the "other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S. 440 at 444. The Court ultimately concluded that the matter involved the second type of challenge, and held that the issue of

a contract's validity is a question for the arbitrator. *Id.* at 446. But in *Buckeye*, the Court specifically clarified:

> The issue of the contract's validity is different from the issue ***whether of any agreement between the alleged obligor and obligee was ever concluded***. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract.

*Id.* at 444 n.1 (emphasis added and citations omitted). As such, the Court drew a distinction between instances where the claims were that an entire contract was agreed to but rendered invalid, and instances where the claim is the agreement was never concluded in the first place. Accordingly, the Court finds *Buckeye* inapplicable to Plaintiffs' challenge that the contract was never concluded.

Furthermore, in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), the Supreme Court expressly stated that it is "well settled that where the dispute at issue concerns *contract formation*, the dispute is generally for courts to decide." *Id.* at 2855–56 (emphasis added). Here, Plaintiffs explicitly "asserts the purported Agreement was never formed." (Doc. No. 10-3 at 16.) Thus, the Court holds that the threshold issue of whether a contract was ever formed is for this Court to resolve. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision.").

However, Plaintiffs' other ground in resisting arbitration is a different story. Plaintiffs argue the retainer agreement is unenforceable and voidable as a matter of law because California Business and Professions Code section 6147, regulating contingent fee agreements, requires not only that a law firm sign its contracts; but that the mutually executed agreement be provided to the client. Failure to do so, Plaintiffs assert, renders the contingent fee agreement voidable at the option of the client. (Doc. No. 10-3 at 16–17.) Defendant points out, "no authority stands for the proposition asserted by Plaintiffs that a

7

purported failure to comply with Section 6147's requirements imposed on *contingency fee agreements* provides the client with a right to void the retainer agreement as a whole, including provisions therein unrelated to payment of attorney fees." (Doc. No. 15 at 3 (emphasis in original).) To the extent Plaintiffs argue that an agreement was formed but seeks to void the contract, that question falls within the purview of *Buckeye*, as it goes to a contract's validity, and is an issue reserved for an arbitrator. *See also Three Valleys Mun. Water Dist.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute.").

In conclusion, the Court holds that the question of whether a contract was ever formed is a question for this Court to adjudicate. However, this Court will save the issue of whether the contract was voidable for an arbitrator.

### b. Whether a Contract Was Formed

Having determined that this Court is the appropriate forum to adjudicate the issue of contract formation, the Court now turns to whether there was indeed an agreement formed. Plaintiffs contend that no agreement existed in the first instance because Defendant never signed the retainer agreement to establish the attorney-client relationship. (Doc. No. 10-3 at 18.) Under California law, "a contract is invalid if not signed by all parties purportedly bound *[o]nly when it is shown*, either by parol or express condition, that the contract was not intended to be complete until all parties had signed." *Croshal v. Aurora Bank, F.S.B.*, No. C 13-05435 SBA, 2014 WL 2796529, at *5 (N.D. Cal. June 19, 2014) (emphasis added) (quoting *Angell v. Rowlands*, 85 Cal. App. 3d 536, 542 (1978)). The Court first notes that the agreement does not contain an express condition providing that it is not complete until all parties have signed it. Indeed, the retainer agreement plainly provides as a condition, "[t]his Agreement will not take effect and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement." (Doc. No. 6, Exhibit 1 at 4.) This is what happened here as Plaintiffs returned a signed retainer agreement to Defendant. (*Id.*) Additionally, California law provides that "in the absence of

8

19-cv-0500 AJB

a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound." *See Croshal*, 2014 WL 2796529, at *5; *see also* Cal. Civ. Code § 3388 (party who has signed a written contract may be compelled to specifically perform it, though the other party has not signed it, if the other party offers to perform it on his part). Here, it is undisputed that Plaintiffs signed the retainer agreement. (Doc. No. 10-3 at 6.) And, it is undisputed that the agreement was fully executed as attorney services were provided through settlement of the state court action. (Compl. ¶ 3.) Defendant also highlights that Plaintiffs paid Defendant for the legal representation after settlement of the state court case. (Doc. No. 15-1, Exhibit 1.) Accordingly, the Court holds that a contract did in fact exist between Plaintiffs and Defendant. *See Elieff v. Groves*, No. CV 10-3879-VBF(JEMX), 2010 WL 11601213, at *3 (C.D. Cal. Aug. 11, 2010) ("Plaintiff presents no authority requiring the production of a fully signed arbitration agreement before it may be enforced, and the authorities located independently by the Court hold that a signature is not required for an enforceable arbitration agreement.").

### c. Whether a Contract to Arbitrate Exists

Next, the Court turns to the question of whether a valid agreement *to arbitrate* exists. Here, the retainer agreement between Plaintiffs and Defendant provides, "[a]ny controversy between the parties regarding the construction, application or performance of any services under this Agreement, including any claim by Client against Attorney for breach or contract, professional negligence (malpractice), breach of fiduciary duty or any other tort of contract claim, shall be submitted to binding arbitration. . . ." (Doc. No. 6, Exhibit 1 at 5.) Additionally, the retainer agreement, which includes Plaintiffs' signature, states "Client acknowledges that Client can retain an attorney whose retainer agreement does not contain an arbitration provision and that Client has been fully advised of all of the possible consequences of arbitration . . . ." (*Id.* at 5–6.)

Thus, the Court finds that there was valid agreement to arbitrate the claims between Plaintiffs and Defendant.

//

## 2. Whether the Agreement Encompasses the Dispute at Issue

The Court's final task is to determine whether Plaintiffs' legal malpractice and breach of fiduciary duty claims fall within the scope of the arbitration agreement. To determine whether an arbitration agreement encompasses a particular dispute, courts must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The Ninth Circuit has stated that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Alliance v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted)).

In this case, the retainer agreement provides that "[a]ny controversy between the parties regarding the construction, application or performance of any services under this Agreement, including any claim by Client against Attorney for breach of contract, ***professional negligence (malpractice), breach of fiduciary duty*** or any other tort of contract claim, shall be submitted to binding arbitration. . . ." (Doc. No. 6, Exhibit 1 at 5 (emphasis added).) The Complaint here only asserts two causes of action—one for professional negligence and the other for breach of fiduciary duty. (Compl. ¶¶ 13–27). Both causes of action fall squarely within the scope of the arbitration agreement.

In sum, the Court agrees with Defendant that the present dispute is for the arbitrator to decide. Plaintiff fails to overcome the presumption that this dispute falls within the scope of the parties' arbitration agreement. Accordingly, the Court **GRANTS** Defendant's motion to compel arbitration.

## V. CONCLUSION

Based on the foregoing, the Court (1) **GRANTS** Defendant's motion to compel arbitration (Doc. No. 6), and (2) **DENIES AS MOOT** Defendant's motion to dismiss (Doc.

No. 5). Furthermore, pursuant to the FAA, the Court **STAYS** the judicial proceedings pending the outcome of any arbitration. *See* 9 U.S.C. § 3; *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978) (holding that courts shall order a stay of judicial proceedings "pending compliance with a contractual arbitration clause"). The parties are ordered to file a joint status report with this Court, detailing the progress of the arbitration in 180 days from the date of this order.

**IT IS SO ORDERED.**

Dated: November 20, 2019

Hon. Anthony J. Battaglia
United States District Judge